HOLSTON VALLEY COMMUNITY HOSPITAL, Plaintiff in Error,

*v.*

KELLY DYKES, Defendant in Error.

(*Knoxville,* September Term, 1958.)

Opinion filed June 5, 1959.

MINTER, McLELLAN and TIPTON, Kingsport, for plaintiff in error.

WOOTEN & WILSON, Kingsport, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a Workmen's Compensation suit under T.C.A. sec. 50-1001. On October 6, 1957, Kelly Dykes, a janitor at the above named hospital, while lifting a trash hamper, strained his back. After a hearing upon his petition for compensation the trial judge found that he had suffered a 40% permanent partial disability and awarded him compensation accordingly; also the sum of $447.15 for hospital and doctors' bills incurred by the Munal Clinic and with Dr. John Munal.

The first three assignments of error are directed at the amount of 40% permanent partial disability to the body as a whole. Counsel for the appellant hospital, while recognizing the rule that if there is any material evidence to support the finding of the trial judge, the same is binding on this Court, yet seems to take the position that the only evidence to support the finding is the testimony of the petitioner himself that he suffered a 50% disability. In this connection counsel refers to the alleged testimony of Dr. Munal, who will be referred to more in detail hereinafter, that the defendant had only a 40% temporary partial disability.

Before proceeding further with a discussion of the case, we make the observation that this transcript is not numbered according to the requirements of the rules. In fact, there are no transcript numbers; therefore, it will be necessary to refer to the depositions as they are numbered by pages and to the bill of exceptions which includes both testimony *ore tenus* and certain depositions read to the Court.

It appears on page 21 of the bill of exceptions which is incorporated into the transcript, that one of the depositions of Dr. John Munal which was taken May 19, 1958, during the trial, was read to the court. On page 23 in answer to a question as to the petitioner's present disability, Dr. Munal answered:

"He has around 40 to 50% from manual labor.

"Q. State in your opinion, is surgery required to obtain relief for him? A. Strong possibility since no improvement has been made, probably if his pain continues in his present state he would have to have surgery.

"Q. State whether or not you are of the opinion that his disability is permanent unless he does have surgery? A. Yes, he has permanent disability unless surgery is performed.

"Q. What percentage is that? A. Same percentage as he has now, 40 to 50%.

"Cross-Examination

"By Mr. Minter:

"Q. That is temporary partial disability? A. It is right now, yes, sir.

"Q. He has the same condition now that he had since you first saw him back in October, 1957? A. Yes, sir, I saw him—yes, sir, same pain.

"Q. And you have not helped him any? A. I have helped him a good deal when he was in the hospital, after he left the hospital he got worse again."

 Thus it is evident that there was something more than the mere statement of the petitioner himself—in fact, there was very substantial evidence to support the finding of the court. Accordingly the first three assignments of error are overruled.

 The fourth assignment of error complains of the action of the court in allowing any medical expense to petitioner for the alleged reason that the employer had furnished petitioner with a competent doctor, Dr. Lyle Smith; that petitioner had not been discharged by Dr. Smith and was still under his care when the petitioner without having raised any protest or question as to the treatment of Dr. Smith voluntarily left Dr. Smith without consulting or notifying the employer and went to see Dr. John Munal.

This assignment brings into consideration T.C.A. sec. 50-1004, which relates to the requirement that the employer furnish medical and surgical expense, etc. In part, the present statute is as follows:

"The injured employee shall accept the same; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; provided, however, that total liability of the employer under this section shall not exceed the sum of one thousand and five hundred dollars ($1,500)."

There is no question that the employer did not comply with this requirement of the statute that the employer shall designate a group of three or more reputable physicians, and so on. The petitioner testified as follows:

"Q. (Mr. Wilson) At the time you were injured state to His Honor whether or not the hospital provided you with the names of three physicians for you to consult, one of which for you to consult

"Mr. Minter: We except to that, if Your Honor please.

"Court: Yes, he may ask him that.

"A. No, sir. My supervisor of my department sent me to Dr. Lyle Smith. I first asked her—I said—she asked me what doctor I wanted to see and I said, 'I want to see Dr. Whitt', and she said, 'Why do you want to see Dr. Whitt', I said, 'I think he's a good doctor'. And she said, 'Who was you last examined by' and I said, 'By Dr. Smith.' And she said, 'Well, you go to Dr. Smith then.' "

The evidence shows that petitioner went to Dr. Smith on the next day and that after several days Dr. Smith put him in the hospital for several days and the last time he went to Dr. Smith was on November 1, 1957, which was about 3 weeks after the accident. The petitioner further testified that he was not getting any better but was in fact getting worse and that nevertheless Dr. Smith stated he was able to go back to work and do light work except lifting; also that Dr. Smith telephoned the supervisor at the hospital to try to get him back to work but found that there was no work available for him except where he would have to lift. This is confirmed by Dr. Smith.

Under those circumstances, the petitioner on November 6, 1957, that is five days after he last saw Dr. Smith, went to see Dr. Munal.

Dr. Munal hospitalized him and treated him over a period of time and testified, as we have already stated, as to his condition.

The employer relies upon the case of *Proctor & Gamble Defense Corporation v. West*, 203 Tenn. 138, 310 S.W.2d 175, 178. The facts of that case are not entirely dissimilar from the facts in the instant case. Near the end of the opinion the Court said:

"Months after doctors and services furnished by the employer in the instant case had ended, Mr. West without consulting his employer in any manner incurred these additional expenses. Under these circumstances we do not think that it is an expense which the employer is required to pay under the foregoing statute."

The petitioner-employee relies upon *Atlas Powder Co. v. Grimes*, 200 Tenn. 206, 292 S.W.2d 13. In that case,

the employee was not given the right to pick one of three or more doctors. In addition, the trial judge found on the evidence that the doctor selected by the company did not do two of the things necessary for an injury of this kind; also, the doctor selected by the employer was not qualified to do those two things, to wit, to perform a laminectomy nor a myleogram.

It is thus seen that the instant case falls somewhere between these two cases. The proof shows that both Dr. Lyle Smith and Dr. John Munal are general physicians and surgeons, though not specialists; however, Dr. Smith had been practising only 5 years when his deposition was taken on February 14, 1958, whereas Dr. Munal had been practising 30 years and, without any derogatory reflection upon Dr. Smith, it is evident that Dr. Munal has had a much longer experience in the practice. We have already set out the fact that Dr. Smith thought that the employee was able to go back to work by the 1st of November, 1957, which was about 3 weeks after the injury, and that with light work for a while, as Dr. Smith said is customary, the employee would be fully recovered; whereas, Dr. Munal has heretofore testified that without surgery the employee had this permanent partial disability of 40 to 50%.

When we consider the fact that this employee was a menial workman, a janitor at the hospital, and of very little education and able to do only the work of a common laborer, we must realize that under the circumstances it never occurred to him that he might have obviated this lawsuit if he had gone back to his employer and requested that he be given another doctor. On the other hand, the employer was first at fault in not complying with

the law in offering the employee a choice of one among three or more reputable physicians and if they had complied with the law, they would be in a far different position from what they are now. We are not agreeable to placing the decision of this question solely on the fact that the employer did not comply with this provision of the law and thus to leave it open to any employee to act on his own initiative under all circumstances in quitting the doctor assigned him by the employer and then switching over without notice to the employer to another doctor. We do think, however, that on the facts of this case the trial judge on the evidence before him and with his opportunity to see the parties and observe particularly this petitioner was justified in allowing such part of the medical expense that he did.

■ It is urged by the employer also that under the last paragraph of the Code section involved a recovery should be limited to $100. This section is discussed toward the end of the opinion in the Atlas Powder Co. case, supra, and has no application to this situation.

■ The fifth assignment is that the court permitted the employer to take the deposition of Mrs. Kretzman, who was the personnel supervisor for this employee, and then excluded the deposition when offered. The trial judge excluded it because he said he had already decided the case except as to the amount of the medical expense to be allowed. We think that the deposition was immaterial anyway because her testimony that she told the employee that he could have any doctor he wanted does not show a compliance with the statute.

All assignments are overruled and the judgment below is affirmed with costs.