FILED
May 28, 2021
09:34 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
IN THE COURT OF WORKERS' COMPENSATION CLAIMS
AT MEMPHIS**

| | | |
|---|---|---|
| **JAMES HAWES,** | ) | **Docket No. 2021-08-1017** |
| **Employee,** | ) | |
| | ) | |
| | ) | **State File No. 2742-2021** |
| **v.** | ) | |
| **McLANE CO., INC.,** | ) | |
| **Employer.** | ) | **Judge Allen Phillips** |

---

### EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This case came before the Court for an Expedited Hearing on May 10, 2021. Mr. Hawes requested an order compelling McLane to provide him a panel of physicians for a back injury. He also requested attorney's fees and a penalty for wrongful denial. McLane asserted that the injury did not arise out of the employment. For the following reasons, the Court holds Mr. Hawes is entitled to a panel of physicians. The Court reserves the issues of attorney's fees and penalties for later determination.

### History of Claim

On December 8, 2020, Mr. Hawes felt back pain when lifting a box. He immediately reported the incident, and McLane completed a First Report of Work Injury.

Later that day, McLane arranged a telephone "triage call" with Emerge Diagnostic. A report from that call documents the history of injury and Mr. Hawes's symptoms. It also included a notation that Mr. Hawes was not referred to "in-person care," but instead was referred for an "EFA test." The report is not clear as to who spoke with Mr. Hawes or who completed the report. It concluded with: "no answer calling Dr. Badii."

On December 11, McLane arranged a "Telemedicine Visit" with FMCA-PA, located in Hollis, New York according to a written report. In the report, Dr. Naiyer Imam said Mr. Hawes had normal range of motion of his back. The doctor then said, "[a] physical

1

examination was conducted using EFA guided technology." In an "EFA Summary," he stated that "both evaluations demonstrated chronic changes" and "inappropriate muscle usage." Dr. Imam concluded: "The EFA findings concur with my examination. Based on the comparison of the baseline EFA and today's EFA there was no acute pathology or change in condition. Therefore there does not appear to be a need for treatment on an industrial basis."

Dr. Imam's findings regarding the EFA were incorporated in an "Electrodiagnostic Functional Assessment Report" also dated December 11. That report was signed by Dr. MaryRose Reaston, PhD. and Dr. Clay Everline, MD. The report began with a "Brief explanation [sic] of Evaluation" that read as follows:

> The Electrodiagnostic Functional Assessment (EFA) is designed to evaluate the functional capacity of the musculoskeletal system. The EFA is a modality that gives the diagnostician an opportunity to monitor the voluntary and involuntary responses of muscle groups in direct correlation with the patient's range of motion . . . The EFA-STM Program allows for comparison of the baseline test with the second test to determine acute pathology or change in condition.

The report documented that Mr. Hawes underwent a "baseline test" (EFA) on August 21, 2020, when McLane hired him, and the second EFA on December 11. The report stated that, "comparisons were made to the baseline to determine changes, if any." Based on the findings of the second EFA− the appearance of chronic changes and inappropriate muscle usage documented by Dr. Imam−Drs. Reaston and Everline agreed that the EFA demonstrated no acute pathology or change in condition from the baseline test. Thus, they concluded that Mr. Hawes needed no treatment "on an industrial basis." They did note that, "[c]linical correlation and screening for any contraindications to suggested treatment modalities is recommended."

At the hearing, Dr. Reaston detailed her qualifications, explaining she held Bachelors, Masters and Doctoral degrees in psychology. She also obtained a certificate in electromyography and clinical neurophysiology after completing a three-month course through Harvard Medical School. She and her husband founded Emerge Diagnostic, and they hold patents on several of the technologies used in EFA testing. The company has numerous clients who use the testing, many of which, like McLane, utilize the EFA protocol at the time an employee is hired to establish a "baseline" of neuromuscular function. That baseline testing might be used for comparison to a post-injury EFA to determine if an injury caused change in neuromuscular function, indicating the presence or absence of injury.

Dr. Reaston explained that EFA testing is superior to traditional electromyography, in that it tests a wider spectrum of neuromuscular functions. She said "medical personnel"

2

actually place the electrodes on the examinee but the test is ordered by a medical doctor. She said the error rate of baseline and post-injury testing is "+/- 5%."

On cross-examination, Dr. Reaston admitted that Drs. Imam and Everline are not located in Tennessee and both are affiliated with Emerge. She admitted to marketing Emerge by emphasizing to employers that EFA reveals a significant percentage of employees have not sustained an injury. Further, she appears in court at no additional charge to defend EFA test results.

For his part, Mr. Hawes explained that he was directed to participate in the EFA test. He did not know the identity of the technician who actually placed electrodes on his body. The EFA performed when McLane hired him was similarly conducted, and it too was performed in the absence of a medical doctor. Mr. Hawes said no one told him of the EFA results until after he learned his claim was denied. McLane denied the claim as documented in a Notice of Denial (Form C-23) on January 14, 2021, stating as the basis, "no injury arose out of or occurred in the course and scope of employment."

Based on this evidence, Mr. Hawes asked for a panel of physicians. He stated he suffered ongoing back pain that prevented him from working. His counsel forcefully argued that Emerge marketed the testing as a means for employers to avoid their statutory duty to provide medical benefits. He called EFA, "advocacy dressed up as science" and counsel claimed his "job is to kill this in the crib" and "send a clear message that this is not how it's done in Tennessee." However, counsel conceded that the science of EFA testing was ultimately not the issue, but rather whether McLane was obligated to provide a panel.

McLane contended that the issue was not one of policy, but instead argued the focus should be whether Mr. Hawes's injury arose out of his employment. Because the EFA showed no injury, McLane argued it had a valid defense and was not required to provide a panel.

## Findings of Fact and Conclusions of Law

### *Panel of physicians*

Under Tennessee Code Annotated section 50-6-204(a)(1)(A), an employer must furnish medical treatment made reasonably necessary by an injury. However, referring an employee to a single physician does not comply with the statute. *Ducros v. Metro Roofing and Metal Supply Co., Inc.,* 2017 TN Wrk Comp App Bd LEXIS 62, at *10 (Oct. 17, 2017), *citing Employers Ins. of Wausau v. Carter,* 522 S.W.2d 174, 176 (Tenn. 1975). Instead, section 204(a)(3)(A)(i) requires that when an "employee has suffered an injury and expressed a need for medical care, the employer *shall* designate" a panel of physicians from which the employee may select one for treatment. (Emphasis added). The emphasized word, "shall," is plain and unambiguous; an employer is required by statute to provide a

3

panel. *See, Thomas v. Zipp Express*, 2017 TN Wrk. Comp. App. Bd. LEXIS 22, at *11 n.4 (Mar. 15, 2017) (the word "shall" is plain and unambiguous).

Here, Mr. Hawes claimed an injury, he timely reported it, and McLane did not contest the underlying incident. However, rather than providing a panel of physicians, McLane provided a telehealth evaluation with a physician of its choosing who supervised the performance of the EFA. Because the EFA showed Mr. Hawes did not sustain an injury, McLane contended it was not required to provide a panel. The Court disagrees. McLane obtained the EFA by failing to comply with the statute when it referred Mr. Hawes to a single physician, thus usurping his privilege to choose one from a panel. Failure to abide by the law cannot form the basis of a defense.

Further, Tennessee law is clear that an employee need not prove every element of his claim by a preponderance of the evidence at an expedited hearing. Instead, he must show he would likely prevail at a hearing on the merits. Tennessee Code Annotated section 50-6-239(d)(1) (2020). In *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015), the Appeals Board explained that "a contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system."

In *McCord*, the Appeals Board noted that, "whether the alleged work accident resulted in a compensable injury [had] yet to be determined." Nevertheless, the Board found the employee came forward with sufficient evidence supporting an order for a panel when the employee established that she reported an injury and the employer offered nothing to rebut the occurrence. *Id*. at *18. The same is true here, and the Court orders McLane to provide Mr. Hawes a panel.

*Attorney's fees and penalty referral*

Mr. Hawes's attorney requested fees for wrongful denial under Tennessee Code Annotated section 50-6-226(d)(1)(B). The Court cannot award those fees because the date of injury is December 8, 2020, a date to which section 226(d)(1)(B) did not apply. Specifically, under the applicable version of section 226(d)(2), the Court might award attorney's fees only for injuries that occurred between July 1, 2016 and June 20, 2020.

Counsel also requested McLane be penalized for wrongful denial of the claim. Tennessee Code Annotated section 50-6-118 provides penalties for certain actions or inactions of parties. It does not specifically provide for "wrongful denial" of a claim. However, under section 118(a)(12), an employer may be sanctioned for failure to timely provide a panel of physicians meeting the statutory requirements. Further, Tennessee

4

Compilation Rules and Regulations 0800-02-01-.06(1) (May, 2018) provides: "Following receipt of notice of a workplace injury and the employee expressing a need for medical care, an employer shall, as soon as practicable but no later than three (3) business days after receipt of such request, provide the employee a panel of physicians as prescribed in T.C.A. § 50-6-204." The Court finds McLane failed to do so and refers it to the Compliance Program for consideration of a penalty.

**IT IS, THEREFORE, ORDERED AS FOLLOWS**:

1. McLane shall provide Mr. Hawes a panel of physicians under Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

2. The Court refers McLane to the Compliance Program for its consideration of a penalty under Tennessee Code Annotated section 50-6-118(12) and Tennessee Compilation Rules and Regulations 0800-02-01-.06(1) (May, 2018) for failure to timely provide a panel of physicians under law.

3. The Court denies Mr. Hawes's request for attorney's fees for wrongful denial at this time.

4. The Court sets a Status Hearing on **Monday, July 26, 2021, at 10:30 a.m. Central Time**. The parties must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Hearing. Failure to call might result in a determination of any issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED May 28, 2021.**

_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits
1. Collective Medical Records
2. First Report of Work Injury with attachments
3. Notice of Denial (C-23)
4. Dr. Reaston's CV
5. Research Article regarding muscle activity patterns

Technical record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Motion to Allow Expedited Hearing Testimony by Telephone
5. Order Granting Motion to Allow Telephone Testimony

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on May 28, 2021.

| Name | Via Email | Service Sent To: |
|---|---|---|
| Jonathan May, Employee's Attorney | X | jmay@forthepeople.com cwoods@forthepeople.com |
| Kyle I. Cannon, Employer's Attorney | X | kcannon@gwtclaw.com |
| Compliance Program | X | WCCompliance.Program@tn.gov |

*Penny Shrum*
**Penny Shrum, Court Clerk**
**Wc.courtcler@tn.gov**



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____          ☐ Motion Order filed on _____

☐ Compensation Order filed on_____          ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)         RDA 11082